# EXHIBIT A

20643975

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Betsy C. Manifold (182450)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
 TELEPHONE NO.: 619/239-4599     FAX NO.: 619/234-4599
 ATTORNEY FOR *(Name)*: Plaintiffs

**FOR COURT USE ONLY**

# FILED
ALAMEDA COUNTY

JAN 2 9 2018

CLERK OF THE SUPERIOR COURT

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
 STREET ADDRESS: 1225 Fallon Street
 MAILING ADDRESS:
 CITY AND ZIP CODE: Oakland, CA 94612
 BRANCH NAME: Rene C. Davidson Courthouse

**CASE NAME:**
Tillman Pugh, et al. v. MetLife, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | RG 18 89 16 65 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
✓ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ✓ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. ☐ Large number of separately represented parties        d. ✓ Large number of witnesses
 b. ✓ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve        e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
 c. ✓ Substantial amount of documentary evidence        f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ✓ monetary    b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action *(specify)*: 8: Failure to reimburse expenses, provide itemized wage statements, pay wages on termination, prohibited wage chargebacks, underpayment of wages, untimely payment of wages, Private Attorneys General Act, unfair business practices
5. This case ✓ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 29, 2018
Betsy C. Manifold
_____
(TYPE OR PRINT NAME)        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

## NOTICE
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

FAXED

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

---

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

20643973

1 | **WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
2 | BETSY C. MANIFOLD (182450)
3 | 750 B Street, Suite 2770
San Diego, CA  92101
4 | Telephone:  (619) 239-4599
Facsimile:  (619) 234-4599
5 |
6 | **THE LAW OFFICES OF JOHN M.**
**KELSON**
7 | JOHN M. KELSON (75462)
483 Ninth Street, Suite 200
8 | Oakland, CA  94607
Telephone:  (510) 465-1326
9 | Facsimile:   (510) 465-0871
10 |
11 | **JERRY K. CIMMET** (33731)
Attorney at Law
12 | 177 Bovet Road, Suite 600
San Mateo, CA  94402
13 | Telephone:  (650) 866-4700

14 | Plaintiffs' Counsel

[Additional Counsel on Signature Page]

FILED
ALAMEDA COUNTY

JAN 3 0 2018

CLERK OF THE SUPERIOR COURT

15 |

16 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

17 | IN AND FOR THE COUNTY OF ALAMEDA

18 |
19 | TILLMAN PUGH, MARGARET
SULKOWSKI, DAVID HENDERSON,
20 | and ROY REESE, individually and on
behalf of all others similarly situated,
21 |
22 |            Plaintiffs,
23 |
24 |         vs.
25 | METLIFE, INC., METROPOLITAN LIFE
INSURANCE COMPANY, METLIFE
26 | RESOURCES, INC., METLIFE
SECURITIES, INC., and DOES 1
27 | THROUGH 100, inclusive,
28 |
                      Defendants.

Case No.: RG 18 89 16 65

**CLASS ACTION, REPRESENTATIVE
AND PRIVATE ATTORNEY GENERAL
COMPLAINT FOR UNLAWFUL PAY
DEDUCTIONS, CHARGEBACKS,
FAILURE TO REIMBURSE EMPLOYEE
EXPENSES, WAITING TIME
PENALTIES, OTHER VIOLATIONS OF
THE CALIFORNIA LABOR CODE,
VIOLATIONS OF THE CALIFORNIA
BUSINESS AND PROFESSIONS CODE,
DAMAGES, INJUNCTIVE RELIEF AND
RESTITUTION**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

1   The Representative Plaintiffs TILLMAN PUGH, MARGARET SULKOWSKI, DAVID

2   HENDERSON and ROY REESE ("Plaintiffs"), by and through their attorneys, for their

3   complaint, make the following allegations upon personal knowledge as to themselves and their

4   own acts, and upon information and belief as to all other matters, as follows:

5   **PRELIMINARY STATEMENT**

6       1.      This is a class action, seeking unpaid wages, including payments for unlawful

7   wage deductions, reimbursement of business expenses, liquidated damages and other penalties,

8   injunctive and other equitable relief and reasonable attorneys' fees and costs, under California

9   law, including, *inter alia*, Title 8 of the California Code of Regulations, Labor Code sections

10  200-204, inclusive, 216-218.6, 221, 223, 226, 226.7, 400-410, 510, 1174, 1194, 1194.2. 1197

11  and 2802, Business and Professions Code sections 17200, *et seq*. and Code of Civil Procedure

12  section 1021.5.

13      2.      Plaintiffs bring this action on behalf of themselves and all other members of the

14  California Class defined herein below who are, or have been, employed by Defendants[1] to sell

15  and/or assist in the selling and/or to market and/or assist in marketing securities and other

16  financial products to the public on their behalf within the applicable statutory periods.

17      3.      The "California Class Period" is designated as the time commencing from four

18  years before the date this action was filed through the date of final judgment herein, based upon

19  the allegations that the violations of California's wage and hour laws, as described more fully

20  below, have been ongoing since that time.  During the Class Period, Defendants have had a

21  consistent policy of, among other things: (1) making improper deductions from the earned and

22  paid commissions of Plaintiffs and the other California Class Members and requiring cash

23  contributions be made back to Defendants for commissions previously paid and for claimed

24  customer losses by Defendants' customers; (2) requiring Plaintiffs and the other California Class

25  Members to pay and/or otherwise suffer deductions from their commissions to pay other

26

27  ───────────────────

[1]      "Defendants" and/or "MetLife" hereinafter refers to METLIFE, INC., METROPOLITAN LIFE

28  INSURANCE COMPANY, METLIFE RESOURCES, INC. and METLIFE SECURITIES, INC.

CLASS ACTION COMPLAINT

- 1 -

1  agents/employees of Defendants for their services to the clients; (3) failing to reimburse or

2  otherwise indemnify Plaintiffs and the other California Class Members for their reasonable

3  business expenses and losses incurred in discharging their duties; (4) willfully failing to pay

4  compensation in a prompt and timely manner to Plaintiffs and the other California Class

5  Members whose employment with Defendants purportedly terminated; and (5) willfully failing

6  to provide Plaintiffs and the other California Class Members with accurate semi-monthly

7  itemized wage statements of the total number of hours each of them worked, the applicable

8  deductions and the applicable hourly rates in effect during the pay period.

9  **INTRODUCTION**

10      4.    California's Labor Code and Industrial Welfare Commission Wage Orders

11  provide expansive protection to workers, including, but not necessarily limited to, entitlements to

12  proper wages, protection against improper wage deductions and substantial penalties for

13  violations of the California labor laws.

14      5.    Defendants provide financial services including the sale of securities and financial

15  products to the public. Plaintiffs are informed and believe and, based thereon, allege that, within

16  the Class Periods, Defendants have operated numerous facilities throughout the State of

17  California. In so doing, Defendants have employed hundreds of individuals in recent years alone

18  in allegedly exempt "Financial Services Representative" ("FSRs") positions. MetLife also

19  improperly treats certain FSRs as "statutory employees" or independent contractors, when these

20  individuals have not met any test for these designations and are not exempt from state labor laws.

21      6.    Despite actual knowledge of these facts and legal mandates, Defendants have

22  enjoyed an advantage over their competition and have disadvantaged their employees by electing

23  not to pay proper wages and/or "penalty" (a.k.a. "waiting time") wages to FSRs by, among other

24  things, making improper deductions from their wages and by failing to reimburse them for

25  expenses they incurred on Defendants' behalf.

26      7.    Plaintiffs are informed and believe and, based thereon, allege that officers of

27  MetLife knew of these facts and legal mandates, yet, nonetheless, repeatedly authorized and/or

28  ratified the violation of the laws cited herein.

CLASS ACTION COMPLAINT

8.    Despite MetLife's knowledge of the entitlement of Plaintiffs and the other California Class Members to proper pay, reasonable expense reimbursement, and Defendants' compliance with the other requirements of California labor laws, MetLife failed to provide the same to Plaintiffs and the other California Class Members in violation of California state statutes, Industrial Welfare Commission Orders and Title 8 of the California Code of Regulations. This action is brought to redress and end this long-time pattern of unlawful conduct.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the claims of Plaintiffs and the other California Class Members under California Labor Code sections 202, 203, 204, 216-218.6, 221, 440-410, 1194, 1194.2, 1197, 2699 and 2802, and California Business and Professions Code sections 17200, *et seq.*, asserted on their behalf, the general public and all "aggrieved persons." Plaintiffs and the other California Class Members are seeking to recover damages in excess of $25,000 for the losses that they have suffered due to Defendants' illegal and unfair actions.

10.    Venue is proper in this county because MetLife maintains an agent field force in the County of Alameda and transacts business, has agents, and is otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have a direct effect on Plaintiffs and those similarly situated within the State of California and within this county.  MetLife operates said agent field force and has employed numerous Class Members in this county as well as throughout the State of California.

## PARTIES

11.    During the relevant times herein, Plaintiff TILLMAN PUGH was employed by Defendants in Alameda County and at other places as a Financial Services Representative pursuant to, among other things, a series of successive written compensation plans with Defendants.

12.    During the relevant times herein, Plaintiff MARGARET SULKOWSKI was employed by Defendants in Alameda County and at other places as a Financial Services Representative pursuant to, among other things, a series of successive written compensation plans with Defendants.

1        13.    During the relevant times herein, Plaintiff DAVID HENDERSON was employed

2    by Defendants in Alameda County and at other places as a Financial Services Representative

3    pursuant to, among other things, a series of successive written compensation plans with

4    Defendants.

5        14.    During the relevant times herein, Plaintiff ROY REESE was employed by

6    Defendants in San Diego County and at other places as a Financial Services Representative

7    pursuant to, among other things, a series of successive written compensation plans with

8    Defendants.

9        15.    In said positions, Plaintiffs were repeatedly subjected to the following improper

10   and illegal acts of Defendants who: (1) made improper deductions from the earned and paid

11   commissions of Plaintiffs and required cash contributions be made back to Defendants for

12   commissions previously paid and for claimed customer losses by Defendants' customers; (2)

13   required Plaintiffs to pay and/or otherwise suffer deductions from their commissions to pay other

14   agents/employees of Defendants for their services to the clients; (3) failed to reimburse or

15   otherwise indemnify Plaintiffs for their reasonable business expenses and losses incurred in

16   discharging their duties; (4) willfully failed to pay compensation in a prompt and timely manner

17   to Plaintiffs whose employment with Defendants purportedly terminated; and (5) willfully failed

18   to provide Plaintiffs with accurate semi-monthly itemized wage statements of the total number of

19   hours they worked, the applicable deductions and the applicable hourly rates in effect during the

20   pay period.  Plaintiffs are informed and believe, and based thereon, allege that this conduct of

21   MetLife is/was commonplace at every location owned and operated thereby.

22       16.    As used throughout this Complaint, the terms "Class Members" refers to the

23   named plaintiffs as well as each and every person eligible for membership in the California

24   Class, as further described and defined below.

25       17.    At all times relevant herein, Plaintiffs were, and now are, persons within the Class

26   of persons further described and defined herein.

27       18.    At all times herein relevant, Defendants METLIFE, INC., METROPOLITAN

28   LIFE INSURANCE COMPANY, METLIFE RESOURCES, INC. and METLIFE SECURITIES,

- 4 -

CLASS ACTION COMPLAINT

1   INC. (hereinafter "MetLife") and/or "Defendants") were, and are, foreign corporations with a

2   principal place of business in New York City and doing business as NASD registered securities

3   brokerage firm in the County of Alameda, and elsewhere. Despite MetLife's attempt to avoid its

4   obligations under California law by treating its FSRs as statutory employees or independent

5   contractors, at all relevant times herein, MetLife served as Plaintiffs' and the other California

6   Class Members' employer within the meaning of Industrial Welfare Commission ("IWC") Wage

7   Order No. 7-2001, 8 C.C.R. § 11070(2)(F).

8       19.    Plaintiffs are informed and believe and, on that basis, allege that Defendants have,

9   and do, directly and/or indirectly employed and/or exercised control over the wages, hours and

10  working conditions of Plaintiffs and the other California Class Members.

11      20.    Unless otherwise alleged in this Complaint, Plaintiffs are informed and believe,

12  and, on that basis allege, that at all times material, each Defendant was the agent and employee

13  of its codefendants, and in doing the things alleged in this Complaint was acting within the

14  course and scope of that agency and employment.

15      21.    The true names and capacities of defendants sued as Does are unknown to

16  Plaintiffs, but Plaintiffs will amend their Complaint when and if the true names of said

17  defendants become known to them.  Plaintiffs are informed and believe, and, on that basis, allege

18  that each of the defendants sued herein as a Doe is responsible in some manner for the events and

19  happenings referred to herein and any reference to "Defendant" or "Defendants" shall mean

20  "Defendants and each of them."

21              **COMMON SUBSTANTIVE ALLEGATIONS**

22      21.    MetLife employed Plaintiffs and all Class members as FSRs.  In recent years,

23  MetLife began to wrongfully misclassify some of its FSRs as independent contractors.

24  Regardless of how FSRs were classified, however, MetLife routinely made improper deductions

25  from the wages of its FSRs to charge them with the Company's operating and overhead expenses

26  as well as its business losses, and required FSRs who were assisted by Professional Marketing

27  Assistants ("PMAs") to pay the salary and benefits expenses of the PMAs.

28

CLASS ACTION COMPLAINT

**MetLife Misclassified Some of Its FSRs as Independent Contractors**

22.    Prior to on or about December 2013, all MetLife FSRs were required to sign the "Appointment of Financial Services Representative and Registered Representative" agreement that described the basic economic relationship between the Financial Services Representative and MetLife.

23.    Since on or about December 2013, MetLife required all of its FSRs to sign either a "Financial Services Representative Common Law Employee Agent Agreement," or a "Financial Services Representative Statutory Employee Agent Agreement," depending on classification criteria established by MetLife.  In addition, FSRs who were approved to offer and service securities, investment advisory and/or variable insurance products were required to sign a "Registered Representative/Investment Adviser Representative Agreement."

24.    FSRs who were classified by MetLife as "statutory employees" purportedly fell within a hybrid tax status (*see* 26 U.S.C. § 3121(d)(3)(B)) and were furnished annual tax information on the IRS form for employees (Form W-2) rather than the form used for independent contractors (Form 1099).  These FSRs were defined by 26 U.S.C. § 3121(d)(3)(B) as "employees," but nonetheless MetLife wrongfully designated the "statutory employee" FSRs also as independent contractors.

25.    Although MetLife thus incorrectly designated its "statutory employee" FSRs additionally as independent contractors, they performed exactly the same duties and had the same responsibilities as all other FSRs, and were, in reality, employees of MetLife rather than independent contractors, for numerous reasons:

        a.     MetLife retained control over their work, which could be done only in designated ways, under supervision and regulation by MetLife.  MetLife provided detailed instructions and guidelines to the FSRs on how to conduct MetLife's business, and reviewed and approved the process at each step.

        b.     FSRs were recruited by MetLife for long-term careers with the Company, with pension, health insurance and other long-term Company benefits.

CLASS ACTION COMPLAINT

- 6 -

1             c.       FSRs had little or no genuine ownership of the business they conducted

2                     for MetLife.  An FSR who left MetLife forfeited his or her business, as

3                     neither the client relationships and information developed by the FSR nor

4                     the future revenue on policies written by the FSR were portable or

5                     transferable, except under terms as dictated by MetLife.

6             d.       FSRs were prohibited from carrying on any non-MetLife work or business

7                     without prior MetLife approval, and had restricted ability to offer

8                     customers access to products from competing companies.

9       26.      In sum, MetLife's "statutory employee" FSRs were independent contractors in

10 name only; in reality, they were employees and were entitled to all the benefits and protections

11 of employment under California labor law.

12 **MetLife's System of Illegal Wage Deductions and Charges**

13 *MetLife Runs a "Company Store"*

14       27.     MetLife charged its FSRs for the use of cubicle space in a MetLife office; for

15 office telephone service, internet and computer support; and for mandatory professional liability

16 insurance.  MetLife charged its FSRs for each of these "company store" facilities by either

17 deducting their costs from commissions due to the FSR, or by directly charging the FSR for

18 payment and claiming the commission wasn't earned by agreement until after such deductions.

19 *MetLife Illegally Shifted Routine Business Losses to Its Employees*

20       28.     MetLife imposed its business losses on the FSR in many routine circumstances

21 when the business written by an FSR did not generate the revenue that MetLife expected.

22       29.     Numerous, commonly occurring circumstances could and would reduce the

23 revenue actually received from a customer (or retained by MetLife) below what the Company

24 had anticipated when it originally brought the customer's insurance policy, annuity or other new

25 business into force.  Expected premiums or other revenue would not be received or retained, for

26 example, if:

27             a.       the customer canceled the policy for some reason;

28             b.       MetLife itself terminated the policy and refunded customer premiums

CLASS ACTION COMPLAINT

1   (*e.g.*, in response to customer complaints, or because the Company

2   concluded in retrospect that the underlying application was materially

3   flawed);

4   c.   the policy lapsed because the customer failed to timely pay premiums; or

5   d.   various other reasons.

6   30.   Regardless of whether such revenue-reducing events were caused by the FSR, the

7   customer, or the Company itself, MetLife thereupon purported to reverse and charge back part or

8   even all of the compensation previously paid to the FSR on the disappointing business including

9   the part of the total commission that was withheld to cover MetLife's routine business expenses.

10   *MetLife Exercised Self-Help to Collect Its Illegal Charges*

11   31.   MetLife exercised self-help practice to collect its illegal charges by paying itself

12   out of an FSR's earnings before paying any of those earnings to the FSR.   An FSR was

13   compensated only if, and to the extent that, the FSR's earnings exceeded the company store

14   debts claimed as owing to MetLife.

15   32.   Any debts not covered by current earnings were carried over to be charged against

16   future earnings.   MetLife routinely delayed post-termination payment of an FSR's unpaid

17   earnings in order to allow additional debts to accrue against them, such as for any post-

18   termination lapses of business originally written by the FSR (though the Company instantly

19   ceased crediting any post-termination commissions on the FSR's business).

20   *MetLife Illegally Shifted Support Staff Costs onto Its FSRs*

21   33.   MetLife encouraged its "statutory employee" FSRs to utilize Professional

22   Marketing Assistants ("PMAs") to assist them in marketing MetLife products and the FSR's

23   services to prospective clients.   According to MetLife, PMAs were purportedly employed by

24   individual FSRs, not by MetLife itself, and the FSRs were required by MetLife to pay all the

25   salary and benefits expenses of any PMAs who worked with them.   MetLife repeatedly reduced

26   the number of its regular in-house branch office support staff who were previously available to

27   provide administrative support to FSRs, thereby forcing FSRs to use and rely on PMAs, who

28   were co-employed by MetLife and Oasis Outsourcing ("Oasis") (see below), to carry out

CLASS ACTION COMPLAINT

- 8 -

1   essential administrative tasks such as processing new business and handling service calls from

2   existing MetLife clients.

3       34.    Despite MetLife's efforts to distance itself from responsibility for PMAs, the

4   PMA's only job function was to work on MetLife business—*i.e.*, the FSR's business—on

5   MetLife premises.   PMAs received mandatory MetLife compliance training, and an FSR's

6   selection of a PMA required MetLife review and approval.   Moreover, MetLife partnered with

7   Oasis, a third party human resources company, to develop a program whereby Oasis co-

8   employed with its partner MetLife every PMA who worked with a MetLife FSR, and MetLife

9   concomitantly required the FSRs to outsource all the human resources, benefits and payroll

10  administration tasks relating to their PMAs to Oasis, which then charged the FSRs administrative

11  fees for such services.

12      35.    In effect, MetLife outsourced all the human resources, benefits, and payroll

13  administration associated with the employment of a PMA to Oasis, which co-employed the PMA

14  whose services would then be used by an individual FSR.  On its website, Oasis has described

15  itself as a "Professional Employer Organization" ("PEO") that provides "human resources

16  outsourcing services to client companies through the use of a co-employment relationship."

17  Oasis further explained that "[t]he PEO [*i.e.,* Oasis] acts as the administrative employer and the

18  client [*i.e.,* MetLife] acts as the worksite employer.   The employer maintains control of the

19  business and is in charge of all business decision-making including employee supervision and

20  staffing decisions.   The PEO handles the time-consuming administrative tasks associated with

21  the employment relationship[,]" *i.e.,* the maintenance of legally compliant HR and benefits

22  practices.   Oasis described the shared employment relationship such as the one it had with

23  MetLife as "co-employment."

24      36.    MetLife developed its program of mandatory PMA "co-employment" with Oasis

25  because by requiring the FSRs to pay Oasis, MetLife's co-partner and co-employer, for the

26  salary and benefits expenses of PMAs (which payments were used by Oasis to pay the salary and

27  benefits expenses of the PMAs), for work performed on MetLife's premises for the benefit of

28  MetLife, it could shift its own business expenses onto the backs of its other employees, *i.e.,* the

CLASS ACTION COMPLAINT

1  FSRs, and further, sought to ensure that uniform compliance and other policies acceptable to

2  MetLife applied to all the PMAs who worked within its business establishment.  The end result

3  was that MetLife shifted, through its co-partnering and co-employment arrangement with Oasis,

4  its PMA staffing costs fully to its FSRs, via the pretense that the PMAs were not MetLife

5  employees, and that the FSRs, through Oasis, were responsible for the payment of the PMAs'

6  salary and benefits expenses.

7        37.    Neither Plaintiffs nor any of the other members of the Class had any choice as to

8  whether to accept the employment policies of MetLife with regard to wage deductions described

9  herein or to choose alternate terms of employment.

*The Financial Services Representative Statutory Employee Agent Agreement Promised
Nothing to MetLife's FSRs*

        38.    Paragraph 15(a) of the Financial Services Representative Statutory Employee

Agent Agreement ("FSR-SEAA") concerns the Compensation Plan and Schedules of the FSRs.

It says that plans and schedules "may be ***issued, amended, modified or terminated by the***

***Company . . . at any time, in its sole discretion***." (Emphasis added).

        39.    Paragraph 16 of the FSR-SEAA concerns Adjustments for Amounts Owed.  It

says that:

> the Company may at any time factor into the calculation of any amounts payable
> from the Company . . . to Representative . . . **any indebtedness** of Representative
> to the Company . . . which may exist at any time, whether such indebtedness is
> based on debts accrued under the Agreement or **any other agreement, implied** or
> written, with the Company . . . ; and such indebtedness shall be a first and prior
> lien against all amounts due or to become due to Representative under the
> Agreement or such other agreement.

(Emphasis added).

*The Registered Representative/Investment Adviser Representative Agreement Also Promised
Nothing to MetLife's FSRs*

        40.    Paragraph  5.1  of  the  Registered  Representative/Investment  Adviser

Representative Agreement ("RR/IARA") also concerns MetLife Compensation Plans.  Like the

FSR-SEAA, the RR/IARA also says that the Compensation Plans "may be ***substituted or revised***

CLASS ACTION COMPLAINT

*by the Firm in its sole discretion* . . . from time to time and [simply] upon notice." (Emphasis added).

41.     Paragraph 5.3 of the RR/IARA concerns disputes.  It says that "[i]n event of a dispute as to whether an Independent Contractor is eligible for Compensation, the *Firm shall determine the same and its judgment shall be final*. (Emphasis added).

42.     Paragraph 5.4 of the RR/IARA concerns compensation.  It says that the FSR's right to receive "any Compensation on the sale or servicing of Available Products under this Agreement shall *cease upon the termination of this Agreement*."  Moreover, the FSR has "*no vested rights in any Compensation payable under this Agreement*."  (Emphasis added). Finally, if the FSR has been "found to have . . . breached any provision in this Agreement, the Firm may, *in its sole discretion, . . . void [FSR]'s rights to receive any Compensation*. (Emphasis added).

43.     Paragraph 5.6 concerns compensation.  It says that "[i]n the event any sale or transaction made by [FSR] is cancelled by the Firm, issuer, sponsor or distributor; or *declared, in the sole determination of the Firm*, void, voidable, illegal or *inappropriate*, [FSR's] eligibility to receive Compensation in connection with such sale or transaction shall *terminate*. (Emphasis added).

44.     Paragraph 5.7 concerns the "indebtedness" (not further defined) of the FSR to MetLife. It says that:

> [T]he Firm may *at any time* factor into the *calculation of any amounts payable by the Firm . . . to [FSR] . . . any indebtedness of [FSR] to the Firm . . . which may exist at any time*, whether such indebtedness is based on debts accrued under the Agreement or *any other agreement, implied* or written, with the Firm . . . ; and such indebtedness shall be a first and prior lien against all amounts due or to become due to Independent Contractor under the Agreement or such other agreements . . . . Any indebtedness accruing hereunder or otherwise, whether before or after termination of this Agreement, shall survive the termination of this Agreement.

(Emphasis added).

45.     Paragraph 5.8 sums up all of the above: "*Upon demand by the Firm*, [FSR] shall promptly return to the Firm all Compensation received in violation of or contrary to any provision under this Section 5 of the Agreement." (Emphasis added).

CLASS ACTION COMPLAINT

46.     Simply put, the FSR-SEAA and the RR/IARA state that in return for the FSR's promise to perform by selling and servicing MetLife clients, MetLife promises nothing but attenuated "commissions" that may well be clawed back.  Thus, the FSR-SEAA and the RR/IARA fail to meet the minimum requirements of a contract, are illusory, and are, therefore, void *ab initio*.

47.     In the alternative, the FSR-SEAA and the RR/IARA are procedurally and substantively unconscionable.  They are procedurally unconscionable since they are contracts of adhesion that the FSRs were forced to accept as a condition of their initial and continuing employment with MetLife.  The FSR-SEAA and the RR/IARA are substantively unconscionable since they are unreasonably favorable to MetLife.

**California Code Violations**

48.     Cal. Labor Code section 3751(a) provides, "[n]o employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the costs of compensation under this division." Cal. Labor Code section 3751.

49.     Through the misclassification of Plaintiffs and the other California Class Members as exempt employees, MetLife has also incorrectly and unlawfully treated said Class Members as exempt from and not entitled to the protections of California Labor Code sections 201 and 202 which require MetLife to pay all wages due to members of the California Class immediately upon discharge. California Labor Code section 203 provides that, if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, for a period not to exceed 30 days of wages.

50.     Furthermore, MetLife has violated California Labor Code section 1174(d) by failing to provide or require the use, maintenance or submission of time records by members of the California Class. MetLife also failed to provide Plaintiffs and the other California Class Members with accurate semi-monthly itemized wage statements of the total number of hours worked by each, and all applicable hourly rates in effect during the pay period, in violation of

CLASS ACTION COMPLAINT

California Labor Code section 226. In so doing, Defendants have not only failed to pay their workers the full amount of compensation due, they have, until now, effectively shielded themselves from their employees' scrutiny for their unlawful conduct by concealing the magnitude (the full number of hours worked), deductions made from pay, failures to reimburse reasonable business expenses and the financial impact of their wrongdoing.

52.    Plaintiffs and all persons similarly situated in the California Class are entitled to unpaid compensation, yet, to date, have not received such compensation despite their termination of their employment with MetLife.

53.    In many, if not most instances, more than 30 days have passed since Plaintiffs and other California Class Members have left MetLife's employ.

54.    As a consequence of MetLife's willful conduct in not paying compensation for all hours worked, Plaintiffs and other California Class Members are entitled to 30 days' wages as penalty under California Labor Code section 203, together with interest thereon and attorneys' fees and costs.

55.    As a direct and proximate result of MetLife's unlawful conduct, as set forth herein, Plaintiffs and other California Class Members have sustained damages, as described above, including loss of earnings for hours worked on behalf of Defendants, in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and other California Class Members herein are entitled to recover "waiting time" penalties/wages (pursuant to California Labor Code section 203) and penalties for failure to provide semi-monthly statements of hours worked and all applicable hourly rates (pursuant to California Labor Code section 226) in an amount to be established at trial. As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and California Class Members are entitled to recover attorneys' fees and costs, pursuant to California Labor Code section 218.5 and 1194 and/or California Civil Code section 1021.5, among other authorities.

56.    In addition to asserting class action claims, pursuant to Business and Professions Code section 17204, Plaintiffs assert claims as private attorney generals on behalf of the general

1   public. Plaintiffs seek to enjoin Defendants from engaging in the unfair, unlawful and/or

2   deceptive business practices alleged in this Complaint, and to require Defendants to make

3   restitution of all monies wrongfully obtained by them through their unfair, unlawful and/or

4   deceptive business practices. A private attorney general (representative) action is necessary and

5   appropriate because Defendants have engaged in the wrongful acts described herein as a general

6   business practice.

7                    **CLASS ACTION ALLEGATIONS**

8            57.    Plaintiffs bring this action individually and as a class action on behalf of all

9   persons similarly situated and proximately damaged by MetLife's conduct, including, but not

10  necessarily limited to, the following Plaintiff Class:

11          **California Class:**

12          All persons who are, or have been, employed by the Defendants MetLife, Inc.,

13          Metropolitan Life Insurance Company, and/or MetLife Securities, Inc. in the State

14          of California to sell and/or assist in selling and/or to market and/or assist in

15          marketing securities and other financial products on their behalf to the public

16          within the applicable statutory periods.

17          58.    Defendants, their officers and directors are excluded from this Class.

18          59.    This action has been brought and may properly be maintained as a class action

19  under California Code of Civil Procedure section 382 and related case law because there is a

20  well-defined community of interest in the litigation and the proposed Class is easily

21  ascertainable.

22                  a.     Numerosity: A class action is the only available method for the fair and

23  efficient adjudication of this controversy. The members of the class are so numerous that joinder

24  of all members is impractical, if not impossible, insofar as Plaintiffs are informed and believe

25  and, on that basis, allege that the total number of Class Members exceeds hundreds of

26  individuals. Membership in the California Class will be determined upon, among other things,

27  analysis of employee and payroll records maintained by Defendants.

28

b.      Commonality: Plaintiffs and the other California Class Members share a community of interest in that there are numerous common questions and issues of fact and law that predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy. These common questions include, but are not necessarily limited to:

i.      Whether Defendants violated California Labor Code sections 200, 202, 204 and portions of applicable California Wage Orders by subjecting their "Financial Services Representatives" to improper deductions from wages, including commissions and losses claimed by Defendants' customers;

ii.      Whether Defendants violated California Labor Code secitons 400-410 and 2802 by charging and/or otherwise requiring their "Financial Services Representatives" to pay directly or indirectly all or a portion of the compensation of other agents/employees of the Defendants, as well as other normal business expenses of the Defendants;

iii.      Whether Defendants violated, and continue to violate, California Labor Code section 1174 by failing to keep accurate records of employees' hours of work;

iv.      Whether Defendants violated, and continue to violate, California Labor Code sections 201-203 by failing to pay wages due and owing at the time California Class Members' employment with Defendants terminated;

v.      Whether Defendants violated, and continue to violate, California Labor Code section 226 by failing to provide semi-monthly itemized wage statements to Class Members of total hours worked and all applicable hourly rates in effect during the pay period;

vi.      Whether Plaintiffs and the other California Class Members are entitled to "waiting time" penalties/wages pursuant to California Labor Code section 203.

c.      Typicality: Plaintiffs' claims are typical of the claims of the California Class.  Plaintiffs and all members of the California Class sustained injuries and damages arising out of and caused by MetLife's common course of conduct in violation of California labor laws, as alleged herein.

CLASS ACTION COMPLAINT

d.      Superiority of Class Action: Since the damages suffered by individual California Class Members while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make, it impractical for California Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other California Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Moreover, Plaintiffs are informed and believe, and based thereon allege, that Defendants, in refusing to properly pay wages and reimburse Class Members for their reasonable business expenses, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of the Class. Consequently, class certification is proper under California Code of Civil Procedure section 382.

e.      Adequacy of Representation: Plaintiffs in this class action are adequate representatives of the California Class, in that Plaintiffs' claims are typical of those of the California Class and Plaintiffs have the same interests in the litigation of this case as the other Class Members.  Plaintiffs are committed to vigorous prosecution of this case and have retained competent counsel experienced in litigation of this nature.  Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.  Plaintiffs anticipate no management difficulties in this litigation.

## FIRST CAUSE OF ACTION
### Failure to Reimburse Expenses and/or Prohibited Case Bond
### (Against all Defendants)

60.      Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

61.      During the Class Period, Defendants required Plaintiffs and the other California Class Members to pay additional sums to Defendants' other agents or employees for the labor

1   necessary to complete the job of Financial Services Representative, as well as other normal

2   business expenses of the Defendants.

3          62.    Thus, Plaintiffs and the other California Class Members had expenditures and

4   losses that were incurred in direct consequence of the discharge of their duties, or of their

5   obedience to the directions of the employer which have not yet been reimbursed by Defendants.

6          63.    At all relevant times, Defendants were aware of and were under a duty to comply

7   with various provisions of California Labor Code sections 406, 407 and 2802(a).

8          64.    California Labor Code section 2802(a) provides:

9       An employer shall indemnify his or her employee for all necessary expenditures
        or losses incurred by the employee in direct consequence of the discharge of his
10      or her duties, or of his or her obedience to the directions of the employer, even
        though unlawful, unless the employee, at the time of obeying the directions,
11      believed them to be unlawful.

12         65.    California Labor Code section 406 provides:
13
        Any property put up by an employee, or applicant as a part of the contract of
14      employment, directly or indirectly, shall be deemed to be put up as a bond and is
        subject to the provisions of this article whether the property is put up on a note or
15      as a loan or an investment and regardless of the wording of the agreement under
        which it is put up.
16

17         66.    California Labor Code section 407 provides:

18
        Investments and the sale of stock or an interest in a business in connection with
19      the securing of a position are illegal as against the public policy of the State and
        shall not be advertised or held out in any way as a part of the consideration or any
20      employment.

21         67.    By requiring Plaintiffs and the other California Class Members to incur
22
     uncompensated expenses in direct consequence of the discharge of their duties, Plaintiffs and the
23
     other California Class Members were forced and/or brought to contribute to the capital and
24
25   expenses of the Defendants' business which is legally a cash bond and which must be refunded

26   by Defendants to each California Class Member.

27

28

CLASS ACTION COMPLAINT

68.    California Labor Code section 2802 (b) and (c) provides for interest at the statutory post judgment rate of 10% simple interest per annum from the date of the expenditure plus attorneys' fees to collect reimbursement.

69.    Therefore, Plaintiffs demand reimbursement for expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, plus return of all cash bonds or other coerced investments in the business of the employer, with interest at the statutory rate and attorneys' fees.

<u>SECOND CAUSE OF ACTION</u>
**Prohibited Wage Chargebacks**
**(Against All Defendants)**

70.    Plaintiffs incorporate in this cause of action each and every allegation of paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

71.    California Labor Code section 200 states:

As used in this article: (a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation; (b) "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.

72.    California Labor Code section 202(a) states:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

73.    There was no definite term in any California Class Member's employment contract.

74.    California Labor Code section 204 requires all wages other than salaries to be paid not less than twice a month. California Labor Code section 204(a) states:

All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any

CLASS ACTION COMPLAINT

calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time.

75.     California Labor Code section 204(b)(1) further states:

Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

76.     Section 8 of the Order of the Industrial Wage Commission, 8 C.C.R. § 11040(8) (Professional, Technical, *et al.*) states:

No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

77.     Defendants charged back both commissions and the actual value of the stock losses allegedly caused by the employee through simple negligence or no fault of the employee at all.

78.     This is a species of cash shortages prohibited from being charged back.

79.     Defendants systematically underpaid their employees by holding back a significant portion of commissions for their own purposes to pay others, and then either paying the wages later than the time required under California Labor Code section 204 or simply not paying them at all.

80.     Defendants did not pay Plaintiffs and the other California Class Members all wages due as required by California Labor Code section 204.

81.     Therefore, Plaintiffs demand an accounting and payment of all wages due, plus interest provided under California Labor Code section 218.6 and attorneys' fees allowed by law.

### THIRD CLAIM FOR RELIEF
**Unlawful Failure to Provide Itemized Wage Statements**
**(Against All Defendants)**

82.     Plaintiffs incorporate in this cause of action each and every allegation of paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

83.     California Labor Code section 226(a) provides in pertinent part:

An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . , (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . . The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

84.     The IWC Wage Orders also establish this requirement in Section 7(B) thereof, Title 8 of the California Code of Regulations section 11010, *et seq.*

85.     Moreover, California Labor Code section 226(e)(1) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

86.     Finally, California Labor Code section 1174 provides:

Every person employing labor in this shall: . . . (d) Keep, at a central location in the state . . . payroll records showing the hours worked daily by and the wages paid to . . . employees . . . . These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years.

CLASS ACTION COMPLAINT

87.     Plaintiffs seek to recover actual damages, costs and attorney's fees under these provisions on behalf of themselves and the other California Class Members.

88.     Defendants failed to provide timely and accurate itemized wage statements to Plaintiffs and the other California Class Members in accordance with California Labor Code section 226(a) and the IWC Wage Orders.  None of the statements, or any writings, provided by Defendants have purported to accurately reflect actual gross wages earned, net wages earned, or the appropriate deductions of such California Class Members.

89.     As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the other California Class Members have sustained damages in an amount to be established at trial, and are entitled to recover attorney's fees and costs of suit.

### FOURTH CLAIM FOR RELIEF
**Unlawful Failure to Pay Wages on Termination**
**(Against All Defendants)**

90.     Plaintiffs incorporate in this cause of action each and every allegation of paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

91.     California Labor Code section 203 provides that:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

92.     Plaintiffs and the other California Class Members were employed by Defendants during the class period and were thereafter terminated or resigned from their positions, yet they were not paid all wages due and owing upon said termination or within seventy-two (72) hours of said resignation and/or termination of employment therefrom.  Said non-payment was the direct and proximate result of a willful refusal to do so by Defendants.

93.     More than thirty (30) days has elapsed since Plaintiffs and the other California Class Members were terminated and/or resigned from Defendants' employ.

94.     As a direct and proximate result of Defendants' willful conduct in failing to pay

CLASS ACTION COMPLAINT

1  said Class Members for all hours worked, Plaintiffs and the other California Class Members are

2  entitled to recover "waiting time" penalties of thirty days' wages pursuant to California Labor

3  Code section 203, in an amount to be established at trial, together with interest thereon and

4  attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF
**Unlawful Underpayment of Wages**
**(Against All Defendants)**

7  95.   Plaintiffs incorporate in this cause of action each and every allegation of

8  paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

9  96.   At all times during the California Class Period, the applicable California Labor

10  Code of Regulations and IWC Wage Orders referenced herein applied to Plaintiffs' and the other

11  California Class Members' employment as regulated and controlled by Defendants.

12  97.   During the Class Period, Defendants underpaid Plaintiffs and the other California

13  Class Members during applicable pay periods by failing to pay them their proper wages due

14  under the California Labor Code as hereinabove alleged.

15  98.   Section 558(a)(1) of the California Labor Code provides that for the initial

16  violation by Defendants underpaying Plaintiffs and the other California Class Members in a pay

17  period Defendants shall pay to Plaintiffs and the other California Class Members fifty dollars

18  ($50) as a civil penalty for each underpaid employee for each pay period to which the employee

19  was underpaid in addition to any amount sufficient to recover underpaid wages;

20  99.   Section 558(a)(2) of the California Labor Code provides that for each subsequent

21  violation by Defendants of underpaying Plaintiffs and the other California Class Members in a

22  pay period Defendants shall pay to Plaintiffs and the other California Class Members one

23  hundred dollars ($100) as a civil penalty for each underpaid employee for each pay period to

24  which the employee was underpaid in addition to any amount sufficient to recover underpaid

25  wages;

26  100.   By failing to fully compensate Plaintiffs and the other California Class Members

27  for the wages that they earned, Defendants violated the California Labor Code provisions cited

28  hereinabove, as well as various Industrial Welfare Commission Wage Orders.

CLASS ACTION COMPLAINT

## SIXTH CLAIM FOR RELIEF
### Unlawful Untimely Payment of Wages
### (Against All Defendants)

101.   Plaintiffs incorporate in this cause of action each and every allegation of paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

102.   At all times during the California Class Period, the applicable California Labor Code sections, Code of Regulations and IWC Wage Orders referenced herein applied to Plaintiffs' and the other California Class Members' employment as regulated and controlled by Defendants.

103.   During the Class Period, Defendants failed to timely pay Plaintiffs and the other California Class Members during applicable pay periods by failing to comply with applicable time requirements for the full payment of wages which were due to be paid under the California Labor Code as hereinabove alleged.

104.   Under the California Labor Code earned wages are required to be timely paid.  In particular, section 204(a) of the California Labor Code provides for the payment of regular wages as follows:

> All wages, other than those mentioned in Section 201 [wages due upon discharge or layoff], 201.3 [temporary service employment], 202 [wages due upon resignation], 204.1 [commission wages of vehicle dealer employees], or 204.2 [executive, administrative, and professional employees], earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular pay days.  Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

105.   In the case of the payment of overtime wages, California Labor Code section 204(b)(1) further provides:  "Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period."

106.   As a general matter, "[t]he requirements of this section [204] shall be deemed

CLASS ACTION COMPLAINT

1    satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are

2    paid not more than seven calendar days following the close of the payroll period."  California

3    Labor Code § 204(d).

4         107.    Defendants during the Class Period did not pay Plaintiffs and the other California

5    Class Members regular wages in compliance with the time requirements of California Labor

6    Code section 204(a), and did not pay Plaintiffs and the other California Class Members their full

7    wages in compliance with the time requirements of California Labor Code section 204(d).

8                          **SEVENTH CLAIM FOR RELIEF**
                          **Private Attorneys General Act**
9                          **(Against All Defendants)**

10        108.    Plaintiffs incorporate in this cause of action each and every allegation of the

11   preceding paragraphs with the same force and effect as though fully set forth herein.

12        109.    Plaintiffs and the other California Class Members are aggrieved employed as

13   defined in California Labor Code section 2699(a)

14        110.    Defendants committed violations of the California Labor Code against Plaintiffs

15   and the other California Class Members by, among other things, failing to pay regular wages in

16   compliance with the time requirements of the California Labor Code section 204 as previously

17   alleged.

18        111.    Labor Code section 2699(f) provides:

19        For all provisions of this code except those for which a civil penalty is specifically
          provided, there is established a civil penalty for a violation of these provisions, as
20        follows:

21            (1)  If, at the time of the alleged violation, the person does not    employ
22        one or more employees, the civil penalty is five hundred dollars ($500).

23            (2)  If, at the time of the alleged violation, the person employs    one  or
24        more employees, the civil penalty is one hundred dollars ($100) for each
          aggrieved employee per pay period for the initial violation and two hundred
25        dollars ($200) for each aggrieved employee per pay period for each subsequent
          violation.
26

27        112.    Pursuant to Labor Code section 2699.3(a), prior to the filing of this complaint,

28   Plaintiffs on behalf of themselves and the other California Class Members gave written notice by

CLASS ACTION COMPLAINT

certified mail postmarked November 3, 2017 to Defendants and online filing to to the Labor and Workforce Development Agency ("LWDA") of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

113.    The LWDA did not provide notice within 65 calendar days of the online filing date of the foregoing written notice that it intended to investigate the alleged violations.

114.    Plaintiffs on behalf of themselves and the California Class Members requests that Defendants be ordered to pay all applicable penalties as authorized by California Labor Code section 2699.

### EIGHTH CLAIM FOR RELIEF
**Unfair Business Practices**
**(Against All Defendants)**

115.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

116.    Plaintiffs further bring this claim for relief seeking equitable and statutory relief to stop the misconduct of Defendants, as complained of herein, and to seek restitution from Defendants of the amounts they have acquired through the unfair, unlawful and fraudulent business practices described herein.

117.    California Labor Code section 90.5(a) articulates the public policy of this State to vigorously enforce minimum labor standards, including the requirement to pay regular wages. Through the wrongful and illegal conduct alleged herein, Defendants have acted contrary to the public policy of this State.

118.    As a result of Defendants' violations of the California Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, *et seq.*, they have unjustly enriched themselves at the expense of Plaintiffs, the other California Class Members, and the general public.

119.    To prevent this unjust enrichment, Defendants should be required to disgorge their illegal gains and should be required to make restitution to the members of the California Class.

120.    Plaintiffs and the other California Class Members also request that this Court enter such orders or judgment as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided in the UCL, California Business and Professions Code section 17203, and for such other relief as set forth below.

121.    Plaintiffs are "persons" within the meaning of California Business and Professions Code section 17204 and have standing to bring this claim for injunctive and equitable relief.

122.    Injunctive relief is necessary to prevent Defendants from continuing to engage in unfair business practices, as alleged herein. Defendants and persons acting in concert with them, have done, or are now doing, and will continue to do or cause to be done, the above-described illegal acts unless restrained or enjoined by the Court.

123.    The conduct of Defendants and their agents, as alleged herein, has been and continues to be deleterious to Plaintiffs, the other California Class Members, and the general public. By this action, Plaintiffs seek to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure section 1021.5.

124.    Pursuant to California Business & Professions Code section 17203, Plaintiffs, on behalf of themselves and all current and former members of the California Class, requests injunctive relief, restitution and/or disgorgement of all sums obtained by Defendants in violation of California Business & Professions Code sections 17200, *et seq.*

125.    The conduct of Defendants, as alleged herein, constitutes an unfair, unlawful and/or fraudulent business practice, as set forth in California Business and Professions Code sections 17200-17208. Specifically, Defendants conduct business activities while failing to comply with the legal mandates cited herein.

### **RELIEF SOUGHT**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment and the following specific relief against Defendants as follows:

A.    That the Court declare, adjudge and decree that this action is a proper class action

CLASS ACTION COMPLAINT

1   and certify the proposed California Class under California Code of Civil Procedure section 382;

2        B.    That the Court declare, adjudge and decree that Plaintiffs and their counsel are

3   appointed to represent the California Class and/or any other appropriate subclasses;

4        C.    That the Court declare, adjudge and decree that Plaintiffs were jointly employed

5   by Defendants;

6        D.    That the Court declare, adjudge and decree that for the initial violation of

7   underpaying Plaintiffs and the California Class Members in a pay period Defendants pay to

8   Plaintiffs and the California Class Members fifty dollars ($50) as a civil penalty for each

9   underpaid employee for each pay period to which the employee was underpaid in addition to any

10   amount sufficient to recover underpaid wages, pursuant to California Labor Code section

11   558(a)(1);

12        E.    That the Court declare, adjudge and decree that for each subsequent violation of

13   underpaying Plaintiffs and the California Class Members in a pay period Defendants shall pay to

14   Plaintiffs and the appropriate California Class Members one hundred dollars ($100) as a civil

15   penalty for each underpaid employee for each pay period to which the employee was underpaid

16   in addition to any amount sufficient to recover underpaid wages, pursuant to California Labor

17   Code section 558(a)(2);

18        F.    That the Court declare, adjudge and decree that Defendants violated the record

19   keeping provisions of California Labor Code sections 226(a) and 1174(d) and section 7 of the

20   IWC Wage Orders as to Plaintiffs and the California Class Members, and willfully failed to

21   provide accurate semi-monthly itemized wage statements thereto;

22        G.    That the Court, upon finding that Defendants violated the record keeping

23   provisions of California Labor Code sections 226(a) and 1174(d) and section 7 of the IWC Wage

24   Orders as to Plaintiffs and the California Class Members, and willfully failed to provide accurate

25   semi-monthly itemized wage statements thereto, further order Defendants to pay as to Plaintiffs

26   and each California Class Member the greater of all actual damages or fifty dollars ($50) for the

27   initial pay period in which a violation occurs and one hundred dollars ($100) per employee for

28   each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand

CLASS ACTION COMPLAINT

1    dollars ($4,000), separately to Plaintiffs and each California Class Member;

2         H.    That the Court declare, adjudge and decree that Defendants violated California

3    Labor Code section 203 by willfully failing to pay all compensation owed at the time of

4    termination of the employment of Plaintiffs and other terminated California Class Members;

5         I.    That the Court declare, adjudge and decree that Defendants by failing to timely

6    pay wages to Plaintiffs and the California Class Members in accordance with California Labor

7    Code section 204 be ordered to pay all applicable penalties as authorized by California Labor

8    Code section 2699.

9         J.    That the Court declare, adjudge and decree that Defendants violated California

10   Business and Professions Code section 17200, *et seq.* by failing to pay Plaintiffs and the

11   California Class-Class Members all wages due on termination, failing to provide Plaintiffs and

12   California Class Members with accurate itemized wage statements, and/or by violating other

13   provisions of the California Labor Code;

14        K.    That the Court order Defendants to pay restitution to Plaintiffs and the California

15   Class Members due to Defendants' unlawful activities, pursuant to California Business and

16   Professions Code sections 17200-17208;

17        L.    That the Court further enjoin Defendants, ordering them to cease and desist from

18   unlawful activities in violation of California Business and Professions Code sections 17200, *et*

19   *seq.*;

20        M.    For interest on the amounts of any and all economic losses, at the highest

21   prevailing legal rate;

22        N.    For reasonable attorney's fees, pursuant to California Labor Code sections 218.5

23   and 1194, California Civil Code section 1021.5, and/or California Government Code section

24   12965(b);

25        O.    For an accounting to determine all monies wrongfully obtained and held by

26   Defendants; and

27        P.    For costs of suit and any and all such other relief as the Court deems just and

28   proper.

CLASS ACTION COMPLAINT

1

**JURY DEMAND**

2      Plaintiffs and the California Class hereby demand trial by jury on all issues triable of

3   right by jury.

4   DATED:  January 29, 2018                    **WOLF HALDENSTEIN ADLER**

5                                                **FREEMAN & HERZ LLP**
                                                 BETSY C. MANIFOLD (182450)
6

7                                                *Betsy C Manifold*

8                                                  BETSY C. MANIFOLD
                                                 750 B Street, Suite 2770
9                                                San Diego, CA 92101
                                                 Telephone: (619) 239-4599
10                                               Facsimile:  (619) 234-4599

11                                               **WOLF HALDENSTEIN ADLER**
                                                 **FREEMAN & HERZ LLP**
12                                               JEFFREY G. SMITH (133113)
13                                               MARK C. RIFKIN
                                                 270 Madison Ave.
14                                               10th Floor
                                                 New York, NY  10016
15                                               Telephone: (212) 545-4762
16                                               Facsimile: (212) 545-4653

17                                               **THE LAW OFFICES OF JOHN M. KELSON**
18                                               JOHN M. KELSON (75462)
                                                 483 Ninth Street, Suite 200
19                                               Oakland, CA  94607
                                                 Telephone:  (510) 465-1326
20                                               Facsimile:  (510) 465-0871

21                                               **JERRY K. CIMMET** (33731)
22                                               Attorney at Law
                                                 177 Bovet Road, Suite 600
23                                               San Mateo, CA  94402
                                                 Telephone:  (650) 866-4700
24

25                                               Attorneys for Plaintiffs TILLMAN PUGH,
                                                 MARGARET SULKOWSKI and ROY REESE,
26                                               and the California Class

27

28   METLIFE:24223.v4

                                                               CLASS ACTION COMPLAINT

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: Tillman Pugh, et al. v. MetLife, Inc., et al. | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE
### SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| [ X] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) |
|---|---|
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) |
|---|---|---|
| Auto Tort | Auto tort (22) | [ ]  34  Auto tort (G) |
| | | **Is this an uninsured motorist case? [ ] yes [ ] no** |
| Other PI /PD / WD Tort | Asbestos (04) | [ ]  75  Asbestos (D) |
| | Product liability (24) | [ ]  89  Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ]  97  Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ]  33  Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ]  79  Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ]  80  Civil rights (G) |
| | Defamation (13) | [ ]  84  Defamation (G) |
| | Fraud (16) | [ ]  24  Fraud (G) |
| | Intellectual property (19) | [ ]  87  Intellectual property (G) |
| | Professional negligence (25) | [ ]  59  Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ]  03  Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ]  38  Wrongful termination (G) |
| | Other employment (15) | [ X]  85  Other employment (G) |
| | | [ ]  53  Labor comm award confirmation |
| | | [ ]  54  Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ]  04  Breach contract / Wrnty (G) |
| | Collections (09) | [ ]  81  Collections (G) |
| | Insurance coverage (18) | [ ]  86  Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ]  98  Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ]  18  Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ]  17  Wrongful eviction (G) |
| | Other real property (26) | [ ]  36  Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ]  94  Unlawful Detainer - commercial **Is the deft. In possession** |
| | Residential (32) | [ ]  47  Unlawful Detainer - residential **of the property?** |
| | Drugs (38) | [ ]  21  Unlawful detainer - drugs **[ ] Yes  [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ]  41  Asset forfeiture |
| | Petition re: arbitration award (11) | [ ]  62  Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ]  49  Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes  [ ] No** |
| | Other judicial review (39) | [ ]  64  Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ]  77  Antitrust / Trade regulation |
| | Construction defect (10) | [ ]  82  Construction defect |
| | Claims involving mass tort (40) | [ ]  78  Claims involving mass tort |
| | Securities litigation (28) | [ ]  91  Securities litigation |
| | Toxic tort / Environmental (30) | [ ]  93  Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ]  95  Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ]  19  Enforcement of judgment |
| | | [ ]  08  Confession of judgment |
| Misc Complaint | RICO (27) | [ ]  90  RICO (G) |
| | Partnership / Corp. governance (21) | [ ]  88  Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ]  68  All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ]  06  Change of name |
| | | [ ]  69  Other petition |