# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TILLMAN PUGH, ET AL.,**<br>Plaintiffs,<br>vs.<br>**METROPOLITAN LIFE INSURANCE COMPANY, ET AL.,**<br>Defendants**.** | CASE NO. 18-cv-01506-YGR<br><br>**ORDER DENYING MOTION TO REMAND**<br>Re: Dkt. No. 32 |

Plaintiffs Tillman Pugh, Margaret Sulkowski, and David Henderson bring this putative class-action lawsuit against defendants Metropolitan Life Insurance Company and Metlife Resources, Inc., a unit of Metropolitan Life Insurance Company[1] (collectively, "MLIC") for failure to reimburse expenses and/or prohibited case bond (Count I); prohibited wage chargebacks (Count II); unlawful failure to provide itemized wage statements (Count III); unlawful failure to pay wages on termination (Count IV); unlawful underpayment of wages (Count V); and unlawful untimely payment of wages (Count VI) in violation of the California Labor Code[2] and the Private Attorneys General Act ("PAGA") (Count VII), as well as unfair business practices (Count VIII) in violation of the California Unfair Competition Law ("UCL").[3] (Dkt. No. 1-1 ("Compl.") ¶¶ 1, 60-125.) Specifically, plaintiffs allege that MLIC improperly treats plaintiffs and putative class members, who have all worked for defendants as financial service representatives ("FSRs"), as "statutory employees" or independent contractors and therefore "elect[ed]" not to pay proper

---

[1] Previous plaintiff Roy Reese and defendants MetLife Securities, Inc. and MetLife, Inc. have been terminated from the case pursuant to stipulation. (*See* Dkt. No. 41.)

[2] Plaintiffs allege violations of California Labor Code §§ 200-204, inclusive, 216-218.6, 221, 223, 226, 226.7, 400-410, 510, 1174, 1194, 1194.2, 1197, and 2802.

[3] Cal. Bus. & Prof. Code §§ 17200, *et seq.*

wages and/or "penalty" wages to FSRs, by, among other things, making improper deductions from their wages and by failing to reimburse them for expenses they incurred on MLIC's behalf. (*Id.* ¶¶ 5-6.) Defendants removed the case to this Court on March 3, 2018. (Dkt. No. 1 ("Removal").)

Now before the Court is plaintiffs' motion to remand.[4] (Dkt. No. 32 ("Remand").) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **DENIES** plaintiffs' motion to remand.[5]

## I.  BACKGROUND

On January 30, 2018, plaintiffs filed this putative class-action lawsuit against MLIC in the Superior Court of the State of California, Alameda County, captioned *Pugh, et al v. MetLife, Inc., et al*, Case No. RG18891665 (the "State Court Action"). (*See* Compl.) Plaintiff's Class Action Complaint ("CAC") asserts class claims against MCIL as set forth above.

The CAC defines the putative class as follows:
> All persons who are, or have been, employed by the Defendants MetLife, Inc., Metropolitan Life Insurance Company, and/or MetLife Securities, Inc. in the State of California to sell and/or assist in selling and/or to market and/or assist in marketing securities and other financial products on their behalf to the public

---

[4] The Court has reviewed the papers submitted by the parties in connection with plaintiffs' motion to remand. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing scheduled for February 12, 2019.

[5] In connection with their motion to remand, plaintiffs request that the Court take judicial notice of seven documents. (Dkt. No. 32-1.) Specifically, plaintiffs request that the Court take notice of four documents filed on the docket in this case, including defendants' notice of removal, two declarations filed in support thereof, plaintiffs' class action complaint, and defendants' answer thereto, both filed in state court, as well as two documents filed with the court in the Central District of California in *Johnson, et al, v. MetLife, Inc., et al*, Case No. SACV 13-128-JLS (RNBx) (C.D. Cal.). (*Id.* at 1.) As a preliminary matter, the Court need not take judicial notice of documents on filed on the docket in the instant action and so **DENIES IN PART** plaintiffs' request as to those documents, namely Exhibits 1, 2, 3, 4, and 7 to plaintiffs' request for judicial notice. For the same reason, the Court **DENIES** plaintiffs' request for judicial notice filed in support of their reply memorandum. (Dkt. No. 40-2.) The documents filed in *Johnson* have been filed with the United States District Court for the Central District of California and are maintained on the court's website. Accordingly, the Court **GRANTS IN PART** plaintiffs' request as it applies to these documents, namely Exhibits 5 and 6 to plaintiffs' request for judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original).

2

within the applicable statutory periods.
(Compl. ¶ 57.) The CAC further defines the statutory period as the "time commencing from four years before the date this action was filed[, or January 30, 2014,] through the date of final judgment herein[.]" (*Id.* ¶ 3.) The CAC does not allege the amount of monetary damages sought by the class, consistent with California practice. (*See* Compl.)

Defendants filed their notice of removal on March 8, 3018, asserting jurisdiction pursuant to 28 U.S.C. Section 1441 based on original jurisdiction as provided by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). (Removal ¶ 11.) In so filing, defendants alleged that the amount in controversy was "over $9,000,85.025." (*Id.* ¶ 37.)

The Court held a case management conference in this action on May 7, 2018 and subsequently issued a case management and pretrial order. (*See* Dkt. Nos. 27, 28.) On January 7, 2019, plaintiffs filed the instant motion for remand citing an amount in controversy below $5,000,000 as the basis thereof. (Remand at 2-4.) In support of their motion, plaintiffs argue that that defendants' calculation of just over $9 million relies on a number of invalid assumptions and is, therefore, inaccurate. (*Id.* at 3.)

Plaintiffs point to an action in the Central District of California dealing with allegations substantially similar to those at issue here in which the court granted final approval of the class action settlement on March 19, 2015.[6] (*See* Dkt. No. 32-2, Ex. 5 ("Johnson Approval").) The settlement agreement approved by the court in *Johnson* defined the class as all individuals employed by MetLife as FSRs in California at any time from January 25, 2009 through March 31, 2014. (Dkt. No. 32-2, Ex. 6 ("Johnson Agreement") ¶¶ 1.1, 1.5, 1.32.) The agreement also released all claims under California law by those members who did not opt-out "that (1) are or

---

[6] In *Johnson, et al, v. MetLife, Inc., et al*, Case No. SACV 13-128-JLS (RNBx) (C.D. Cal. 2015) ("*Johnson*"), plaintiffs asserted claims for: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.; (2) failure to pay overtime wages under Cal. Labor Code §§ 510, 1194, 1998; (3) failure to reimburse expenses in violation of Cal. Labor Code §§ 406, 407, 2802(a)(c); (4) prohibited wage chargebacks in violation of Cal. Labor Code §§ 200, 202, 204; (5) failure to provide meal and rest periods in violation of Cal. Labor Code §§ 226.7, 512; (6) failure to provide itemized wage statements in violation of Cal. Labor Code §§ 226, 1174; (7) failure to pay wages on termination in violation of Cal Labor Code § 203; and (8) unfair business practices in violation of Cal. Bus. Prof. Code §§ 17200 *et seq*. (Johnson Approval at 2.)

could have been asserted in [the *Johnson*] litigation; (2) involve failure to pay FSRs overtime compensation or provide them with paid meal and rest breaks; (3) stem from the alleged misclassification of FSRs as exempt employees; (4) involve failure to reimburse or unlawful imposition or deduction of expenses or costs by MetLife; or (5) 'aris[e] from' the aforementioned claims." (Johnson Approval at 5.) The *Johnson* agreement released all such claims "that arose or accrued at any time up until the date of the entry of the Final Approval Order," which was March 19, 2015. (Johnson Agreement ¶ 1.29; Johnson Approval.) Therefore, plaintiffs here aver that the class period in the instant action is limited to 15 months, rather than the 29 months used by defendants in their $9 million calculation, "which, *standing alone*, would reduce the potential amount in controversy to well below the jurisdictional amount[.]"[7] (Remand at 3 (emphasis in original).)

Plaintiffs assert that the amount in controversy is further reduced because "(2) the number of FSRs and Retiree Brokers is only 390, not 437 [as assumed by defendants]; (3) [defendants'] assumption that 100% of class members would assert claims and that all of these claims would be maximized in the same amount of each class member is highly speculative and wholly unrealistic; and (4) [defendants'] attempt to *add* attorneys' fees based on a benchmark allowance of 25% ignores the fact that such fees are typically paid *out of, not in addition to, the common fund*[.]" (*Id.* (emphasis in original).) Plaintiffs estimate that the amount in controversy "could be as little as $3,323,632.84." (*Id.* at 3-4.)

## II. LEGAL STANDARD

"Federal courts are of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Accordingly, there is a

---

[7] The Court notes that plaintiff's counsel represents that they learned of the *Johnson* settlement for the first time on November 27, 2018 when they came across the case while doing research. (*See* Dkt. No. 33 ¶ 4.) However, defendants contend that plaintiff Tillman Pugh received more than $700 in settlement monies from the *Johnson* settlement. (Dkt. No. 34 at 5-6 n. 2.) Plaintiffs do not respond to this assertion. (*See* Dkt. No. 40.)

1  "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v.*

2  *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The burden of establishing federal jurisdiction is

3  upon the party seeking removal." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.

4  1988). CAFA does not shift the burden to establish subject matter jurisdiction of a removed

5  putative class action. Thus, that burden remains with the party seeking removal. *Abrego Abrego*

6  *v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006).

### III. ANALYSIS

Under CAFA, federal district courts have jurisdiction over class actions where the amount in controversy exceeds $5 million, there are more than 100 putative class members, and "any member of a class of plaintiffs is a citizen of a [s]tate different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiffs aver that the amount in controversy is not, as defendants represent in their notice of removal, over $9,000,85.025, but "falls well below the jurisdictional threshold of $5,000,000, and, indeed, could be as little as $3,323,632.84." (Remand at 3-4.)

As in the present case, "[w]here the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego*, 443 F.3d at 683 (internal citations omitted); *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement.).

Defendants aver that the *Johnson* settlement does not, and cannot, affect the amount in controversy because "defenses, including those involving purportedly settled and released claims, are not to be considered in assessing the amount in controversy for removal purposes." (Dkt. No. 34 ("Opp.") at 2.) In support thereof, defendants contend that the releases resulting from the *Johnson* settlement constitute an affirmative defense, which falls well outside the scope of a court's review when determining amount in controversy. Defendants rely on the Supreme Court decision in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) and the Ninth Circuit's decision in *Geographic Expeditions, Inc. v. The Estate of Jason Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010).

In *St. Paul Mercury*, the Court held that after a case is properly filed in federal district court, "a subsequent reduction of the amount claimed cannot oust the district court's jurisdiction." *St. Paul Mercury*, 303 U.S. at 295. In so holding, the Court noted as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. **It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal**. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. **But if, from the face of the pleadings**, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. **Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction**.

*Id.* at 288-90 (emphasis supplied).

Relying on the Court's decision in *St. Paul Mercury*, the Ninth Circuit in *Geographic Expeditions* held that the fact that the defendant in a state court action could point to as a potential defense a contractual damages limitation that would restrict the plaintiff's recovery in that action to less than $75,000 did not preclude federal jurisdiction. *Geographic Expeditions*, 599 F.3d at 1108. In so holding, the Ninth Circuit noted that the rule established in *St. Paul Mercury* "makes sense; just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense." *Id.* The Ninth Circuit further noted that "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction" and confirmed that this rule applied even where that this "rule applies even though [the defendant] is asserting the potential defense, and at the same time seeking a federal forum based on diversity jurisdiction." *Id.*

6

Defendants do not point to, and the Court cannot find, binding authority for treating releases as potential defenses for the purposes of evaluating amounts in controversy in determining jurisdiction. However, a number of district courts and at least one circuit have so concluded. *See e.g.*, *Pagel v. Dairy Farmers of Am. Inc.*, No. 2:13-cv-02382-SVW-VBK, 2013 WL 12166177, at * 6 (C.D. Cal. July 9, 2013) (denying motion to remand and holding that releases that, if valid would reduce the amount in controversy below the jurisdictional amount, "do not pose a barrier to jurisdiction"); *Rosenboro v. Kim*, 994 F.2d 13, 19 n. 4 (D.C. Cir. 1993) (reversing dismissal of diversity action and noting that "the presence of such a release is a defense to liability, and defenses cannot be considered in determining the amount in controversy"). [8]

Here, as in *Pagel*, the releases resulting from the *Johnson* settlement constitute an affirmative defense to MCIL's liability to at least a portion of plaintiffs' claims. As noted by plaintiffs in their motion for remand, "[i]n the case at bar the claims asserted by Plaintiffs are plainly embraced by the *Johnson* Settlement Agreement." (Remand at 7.) However, even if the resulting releases actually bar some portion of plaintiffs' claims enumerated in the CAC such that plaintiffs cannot hope to recover $5 million or more, the existence of those releases "does not preclude federal jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108.

Next, plaintiffs seek to expand beyond "the face of the pleadings" to justify remand. The

---

[8] *See Campos v. Sodexo, Inc.*, No. CV 10-09752 MMM (FFMx), 2011 WL 13217929, at * 12 (C.D. Cal. Apr. 18, 2011) (denying motion to remand and rejecting argument that previous settlement reduced amount in controversy, holding that "[t]o the extent [defendant] could assert as an affirmative defense that [plaintiff's] damages should be reduced by the amount of her workers compensation settlement, courts do not look to valid defenses when calculating the amount in controversy") (quotations and citations omitted); *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, No. 12 Civ 6363, 2013 WL 1955882, at * 4 (S.D.N.Y. May 10, 2013) (holding that affirmative defenses, including release, "may not be used to whittle down the amount in controversy"); *see also Lara v. Trimac Transp. Servis. (W.) Inc.*, No. CV 10-4280-GHK-JCX, 2010 WL 3119366, at *3 n. 4 (C.D. Cal. Aug. 6, 2010) (rejecting consideration of an alleged offset from the plaintiff's potential damages when determining amount in controversy).

Court is not persuaded by plaintiffs' argument that because the *Johnson* settlement had been approved by a court prior to the filing of the instant action, it is distinguished from "those cases relied on by Defendants in which non-adjudicated and contested defenses have been asserted by parties seeking remand." (Dkt. No. 40 ("Reply") at 5.) Plaintiffs argue that this case differs from the those presented in *Geographic Expeditions*, *Pagel*, *Campos*, and *Lara* where "the potential defense had not yet been adjudicated," because here, "the *Johnson* settlement has been completely adjudicated and a final judgment was filed in March 2015, binding all parties." (*Id*. at 6.) In so arguing, plaintiffs attempt to transform the settlement and resulting releases from a defense into "an uncontested ***prior*** event, pre-dating the commencement of the present action[.]" (*Id.* at 5 (emphasis in original).)

Plaintiffs' argument ignores the fact that the Central District's approval of the *Johnson* settlement does not, and cannot, impact whether the resulting releases implicate plaintiffs' claims in the instant action because, as plaintiffs point out, the *Johnson* case was completely adjudicated in March 2015, well before plaintiffs filed the instant action. Therefore, in order to determine how and to what extent the *Johnson* settlement would impact the amount in controversy in this action, the Court would still need to engage in the very sort of "evaluat[ion]" against which the Ninth Circuit cautioned in *Geographic Expeditions* and would "essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108. Defendants themselves content that the classes are potentially different, and thus, the effect of the settlement not easily determined. (Opp. at 6.)

Moreover, in the Supreme Court's determination in *St. Paul Mercury* that "the fact that the complaint discloses the existence of a ***valid*** defense to the claim" that would reduce the value of that claim to below the jurisdictional limit does not eliminate federal jurisdiction suggests that the validity of a defense has no bearing on whether its existence should impact the amount in controversy. *See St. Paul Mercury*, 303 U.S. at 289-90 (emphasis supplied).

Thus, because the *Johnson* settlement and the resulting releases have no impact on the amount placed in controversy by the claims alleged in plaintiffs' CAC and without the *Johnson* settlement the amount in controversy is at least $7,668,501.58, which exceeds the $5 million threshold under CAFA,[9] the Court **DENIES** plaintiffs' motion to remand.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' motion to remand.

This Order terminates Docket Number 32.

**IT IS SO ORDERED.**

Dated: February 7, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] This calculation assumes that each of plaintiffs' allegations regarding the assumptions taken by defendants are correct and therefore represents the minimum amount in controversy on the face of the complaint, excluding any review of the *Johnson* settlement. (*See* Remand at 3-4, 8.)

9